COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Benton and Coleman
Argued at Richmond, Virginia


TERRY O. ROLLINS
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2053-96-3      CHIEF JUDGE NORMAN K. MOON
                                       OCTOBER 14, 1997
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                      Donald R. Mullins, Judge

          Frederick W. Adkins (Cline, Adkins & Cline,
          on brief), for appellant.

          Steven A. Witmer, Assistant Attorney General
          (James S. Gilmore, III, Attorney General;
          Kimberley A. Whittle, Assistant Attorney
          General, on brief), for appellee.


     Terry O. Rollins appeals his convictions of two counts of

aggravated sexual battery in violation of Code § 18.2-67.3.

Rollins asserts that the trial court erred in admitting into

evidence sexually explicit books and videotapes found in his

home.  Rollins argues that the materials were neither relevant

nor material and were highly prejudicial and inflammatory.

Holding that the determination of the admissibility of evidence

rests within the sound discretion of the trial court and that the

trial court's decision was not plainly wrong, we affirm.

     In August 1991, Rollins married Carol Hubert, a legally

blind woman with three dependent children from a previous

marriage: eleven-year-old Evan Cook, five-year-old Elizabeth

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Ashley Hubert, and four-year-old Brittany Hubert.  Hubert and her family moved into Rollins' home shortly after their marriage.

In October 1995, Ashley confided in her mother that Rollins had "touched her in her private places" on various occasions during the preceding five-year period.  Hubert informed the Department of Social Services, who in turn referred the matter to the Tazewell County Sheriff's Office.  Rollins was arrested, and Hubert permitted a search of her and Rollins' home.  Tazewell police officers found a variety of sexually explicit materials, including six books which pertained to incest and sexual relationships between adults and children and five videotapes in the "Taboo" series which dealt with incest.

At trial, eleven-year-old Ashley testified that Rollins started touching her three or four weeks after her family moved into his house.  She stated that he would put his hands under her clothes and rub between her legs and that he had forced her to touch his genitals on one occasion.  The incidents usually occurred in Rollins' bedroom or while he was driving her to or from dance classes.  Ashley also testified that on one occasion, Rollins called her into his room and flipped through two sexually explicit books in front of her.  She also recalled occasions when Rollins called her to his room while he was watching movies that "showed naked people on them sometimes."  Ashley also testified that Rollins told her that when she got older and was ready to have sex, she should do so with him first.

Over Rollins' objection, the Commonwealth introduced into

evidence eleven of the 259 items retrieved from his home.  The eleven admitted items were sexually explicit books and videotapes that dealt with incest and pedophilia.  The court refused to admit some of the sexual items offered by the Commonwealth because they did not concern those specific topics.  The jury was not permitted to view the admitted videotapes, but the tapes had labels implying that they contained explicit sexual content which involved incest or pedophilia.  Two of the admitted books were books that Ashley alleged Rollins viewed in her presence.

Rollins testified that he never touched Ashley in an inappropriate manner and stated that the only time he touched either of his wife's daughters in their vaginal areas was when "[o]ne of them was raw, I would put some Vaseline on them . . . ."  Rollins admitted owning the sexually explicit books and materials found in his house.  He explained that he bought the materials in the 1970s and that he had not looked at most of the material.  On cross-examination, he admitted having viewed some of the movies which involved sex and incest and that he had some of the movies transferred from beta to VHS format.

### Admissibility of Sexually Explicit Materials

"Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted." Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985).  Furthermore, evidence may be admitted to prove the state of mind of the accused and for the purpose of proving motive.

- 3 -

See Enoch v. Commonwealth, 141 Va. 411, 438, 126 S.E. 222, 230 (1925).

In Enoch, a woman was raped and murdered. Two days later, Enoch was arrested and police discovered photographs of naked women in his possession. Id. at 437, 126 S.E. at 230. The trial court admitted the photographs as evidence "tending to show the state of mind of the accused and the motive for the commission of the double crime of rape and murder." Id. at 437–38, 126 S.E. at 230. The Supreme Court, holding that "[t]he question of the [photograph's] admissibility was one resting in the sound discretion of the trial court," ruled that the trial court's decision was not plainly wrong and affirmed. Id. at 438, 126 S.E. at 230.

In Bunting v. Commonwealth, 208 Va. 309, 313–14, 157 S.E.2d 204, 208 (1967), the Supreme Court, considering another rape case in which sexually explicit material belonging to the defendant was admitted, distinguished Enoch. In Bunting, police searched the defendant's home five months after an alleged rape and discovered "girlie magazines" and photographs of a "scantily clothed female." Id. at 311, 157 S.E.2d at 206. The Supreme Court held that the trial court erred in admitting the photographs. Id. at 314, 157 S.E.2d at 208. The Court stated:

> We do not think that Enoch can be relied on as authority for admitting in evidence the photographs in the present case. There the lewd pictures of naked women were found on the accused shortly after the young lady was raped and murdered. In the present case the pictures show defendant's wife in bed wearing what appears to be short pajamas. The

- 4 -

> evidence does not show when the photographs
> were taken and for what purpose.

Id.

Here, the court selectively admitted into evidence only some of the sexual materials found in Rollins' home, in a fashion consistent with the principles delineated in Enoch and Bunting. As in Bunting, sexual material found in Rollins' home that related to a general interest in sexual conduct was excluded. However, sexual material that suggested an interest in incest and pedophilia, the acts for which Rollins was on trial, was admitted as being relevant to his motive and intent.

Furthermore, Ashley testified that Rollins viewed some of the admitted materials in her presence. The jury could reasonably infer that the admitted books and tapes were among the items viewed by Rollins and that they were used "to inflame [his] sexual passions." Enoch, 141 Va. at 437-38, 126 S.E. at 230. Accordingly, the materials were admissible to prove Rollins' intent and motive.

In addition, the materials were admissible to establish an absence of mistake. See Black v. Commonwealth, 20 Va. App. 186, 192, 455 S.E.2d 755, 758 (1995). Rollins asserts that he only touched Ashley's vaginal area for medicinal purposes. His possession and use of sexually explicit material depicting incest and pedophilia is probative of his intentions and motive.

The determination of the admissibility of evidence is a question which rests within the sound discretion of the trial

court, and such determinations, unless plainly wrong, will not be disturbed on appeal.  <u>Enoch</u>, 141 Va. at 438, 126 S.E. at 230. Here, we cannot say that the trial court abused its discretion in determining that the probative value of the sexually explicit material as it pertained to Rollins' motive and intent outweighed its prejudicial effect, and we therefore affirm.

<u>Affirmed.</u>