COURT OF APPEALS OF VIRGINIA

Present:  Judge Annunziata, Senior Judge Duff and
          Retired Judge Kulp[*]
Argued at Alexandria, Virginia


DON WILSON, S/K/A
 DONALD CORDELL WILSON

                                      MEMORANDUM OPINION[**] BY
v.    Record No. 2255-99-4             JUDGE JAMES E. KULP
                                         MAY 9, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  Benjamin N. A. Kendrick, Judge

          Clark E. Brodersen for appellant.

          Steven A. Witmer, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Don Wilson, s/k/a Donald Cordell Wilson (appellant), was

tried and convicted by a jury in the Circuit Court of Arlington

County (trial court) on the charge of abduction.  On appeal, he

contends the trial court erred when it admitted evidence regarding

a prior altercation between him and the victim.  Finding no error,

we affirm the judgment of the trial court.

_____

     [*] Retired Judge James E. Kulp took part in the consideration
of this case by designation pursuant to Code § 17.1-400,
recodifying Code § 17-116.01.

     [**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Background

Michelle Robinson met appellant on October 24, 1997, and the two began dating shortly thereafter. She testified that their relationship changed following a February 1998 argument during which, in the presence of Robinson's son D.R., appellant threw a trash can at her head.[1] The trial court admitted this evidence over appellant's objection. Robinson was not harmed in the incident and continued to date appellant, but he was no longer allowed in her residence.

Around 9:30 p.m. on April 8, 1998, Robinson went to Mary Savoy's residence on Rolfe Street in Arlington. Sometime that evening, Robinson's youngest son called from home. He reported that someone kept calling from the telephone at the front door of their apartment building. Robinson checked her voice mail and there were twenty-two messages from appellant, including one in which appellant threatened Robinson with bodily harm. Later that night, someone called Savoy's apartment and, disguising his voice as Robinson's son Michael, asked that Savoy send Robinson outside.

---

[1] In his brief, appellant contends Robinson testified that appellant threw the trash can at her son. Robinson stated, however, that appellant "threw a trash can . . . at my head with my son, which was nine years old, D.R. was with me." She testified during cross-examination that D.R. was standing next to her when appellant threw a trash can at her head. There was no evidence that appellant targeted or struck Robinson's son with the trash can.

Robinson left Savoy's apartment around 2:45 a.m. and was walking home when appellant jumped out from behind some bushes. He accused Robinson of being unfaithful and ordered her to accompany him. When Robinson refused, appellant grabbed her and began pushing her toward his car. Robinson ran screaming to a nearby apartment building and knocked on a door for assistance. Appellant pursued Robinson and was able to force her into his car. She escaped, however, and ran toward Cindy Mohammed's apartment building. She screamed for help and rang doorbells to get assistance. She grabbed onto a railing when appellant approached, but appellant was able to pull her away and force her into his car.

Robinson testified that she escaped once more, but appellant again forced her into his car. Appellant then drove down Rolfe Street, where they encountered police officers who had arrived in response to a report of a man assaulting a woman. When appellant stopped the car, Robinson fled the vehicle and ran up to Officer Adams.

Robinson testified that she had fallen and scraped her knees earlier when appellant was pushing her toward the car. She further testified that she broke a fingernail while struggling with appellant. Adams confirmed that Robinson was bleeding from abrasions on her knees and that one of Robinson's fingernails was coming off. Robinson denied using any drugs that night and denied telephoning appellant from Savoy's apartment.

-

Cindy Mohammed testified that in the early morning hours of April 9, 1998, she was awakened by a woman screaming for help. She looked out one of her windows and saw a woman holding onto a railing from which a man was trying to pull her. The man finally forced the woman from the railing and threw the woman to the ground. Mohammed overheard the man tell the woman "be quiet, if you scream again, I am going to kill you." Mohammed called the police to report the incident.

Appellant testified that Robinson called him at 2:00 a.m. on April 9, 1998. He said she admitted using drugs and asked him to come get her. Appellant stated he refused, but that Robinson called him an hour later, at which time he agreed to come pick her up. Appellant denied forcing Robinson into his car and denied leaving twenty-two messages on her voice mail.

## Analysis

Appellant contends the prejudice caused by Robinson's testimony about the February trash can incident outweighed the probative value of that evidence. He asserts that the trial court committed reversible error by admitting this evidence.

> Evidence of other crimes or bad acts is inadmissible if it is offered merely to show that the defendant is likely to have committed the crime charged. However, such evidence is admissible if it tends to prove any element of the offense charged, even though it also tends to show that the defendant is guilty of another crime.

-

Goins v. Commonwealth, 251 Va. 442, 462, 470 S.E.2d 114, 127 (1996) (citations omitted).  Evidence of a defendant's prior bad acts is admissible "to show the conduct and feeling of the accused toward his victim, or to establish their prior relations."  Sutphin v. Commonwealth, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985); see Morse v. Commonwealth, 17 Va. App. 627, 632, 440 S.E.2d 145, 148 (1994) (holding that prior acts of violence by defendant in demanding sex from the victim were relevant in proving that the intercourse leading to the marital sexual assault charge occurred as a result of a threat of force).

"In addressing the admissibility of other crimes evidence the court must balance the probative value of the evidence of the other offenses and determine whether it exceeds the prejudice to the accused.  The court's weighing of these factors is reviewable only for clear abuse of discretion."  Pavlick v. Commonwealth, 27 Va. App. 219, 226, 497 S.E.2d 920, 923-24 (1998) (en banc) (citations omitted).  Likewise, whether evidence of prior bad acts is too remote in time to be relevant is left to the discretion of the trial court.  See Collins v. Commonwealth, 226 Va. 223, 230, 307 S.E.2d 884, 889 (1983).

The Commonwealth had the burden of proving that appellant forcibly seized and transported Robinson.  See Code § 18.2-47 (defining abduction).  The February trash can throwing incident was relevant because it revealed the nature of the relationship

-

between appellant and Robinson.  This relatively recent incident tended to prove that appellant would use violence against Robinson if he was unhappy with her.  Accordingly, the trial court did not abuse its discretion in admitting this evidence.[2] Moreover, given the weight of the evidence against appellant and the relatively mild nature of the February incident, any error in admitting the evidence was harmless.  See Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (holding that non-constitutional error is harmless when it plainly appears from the record that the defendant had a fair trial and that substantial justice was reached).

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

---

[2] Appellant argues that, to be admissible, the prior bad act must be similar in character to the current offense.  We express no opinion on the merits of this argument, but find that appellant's assaultive behavior of throwing the trash can was similar in character to the violence accompanying the abduction.

-